## IN THE MIDDLE DISTRICT OF FLORIDA
## UNITED STATES DISTRICT COURT
## JACKSONVILLE DIVISION

WENDY PAYNE,

    Plaintiff,

v.   Case No.: _____

SEMINOLE ELECTRIC COOPERATIVE,
INC.., A Florida corporation,

    Defendant.
_____/

## COMPLAINT

COMES NOW, Plaintiff, WENDY PAYNE, by and through her undersigned counsel, and sues the Defendant, SEMINOLE ELECTRIC COOPERATIVE, INC., and alleges the following:

### JURISDICTION AND VENUE

1. At all times material hereto, Plaintiff, WENDY PAYNE (hereinafter "PAYNE"), was a resident of Putnam County, Florida.

2. At all times material hereto, Defendant, SEMINOLE ELECTRIC COOPERATIVE, INC. (hereinafter, "SEMINOLE"), is and was a Florida corporation registered and authorized to conduct business in the state of Florida

3. This Court has jurisdiction pursuant to 28 U.S.C. 1331.

4. Venue lies within the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. 1391(b) because a substantial part of the events giving rise to this claim arose in this Judicial District.

1

## ADMINISTRATIVE PREREQUISITES

5. All conditions precedent to bringing this action have occurred.

6. Plaintiff, PAYNE timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") regarding the acts complained of herein, a copy of which is attached hereto as Exhibit "A."

7. More than 180 days have passed since the filing of those charges.

8. Plaintiff, PAYNE, has received the Notice of Right to Sue (attached hereto as Exhibit B) from the EEOC and this action was filed before it expired.

## GENERAL ALLEGATIONS

9. Plaintiff, PAYNE, worked as a Human Resources Generalist for Defendant, SEMINOLE, for nearly 38 years, since she began her employment in 1981.

10. In July 2007, Defendant, SEMINOLE, brought in an X-ray machine that was being used in the room adjacent to Plaintiff, PAYNE's, office and was pointed toward Plaintiff's person without her knowledge with no lead barrier to protect her from the radiation.

11. Plaintiff, PAYNE, was unknowingly exposed to X-ray radiation at work between 300 and 390 times in three days.

12. As a result of the repeated exposure, Plaintiff, PAYNE, became very sick and was diagnosed with various ailments, including but not limited to radiation poisoning, peripheral neuropathy, polyneuropathy, axonal neuropathy, and loss of motor control. To date, she still experiences extreme pain, burning, and throbbing all over the front of her body, legs, arms, hands, and feet, as well as incontinence and loss of bowel control, as a result of the radiation exposure. Plaintiff will have an increased risk of cancer for the rest of her life.

13. Furthermore, between 2009 and 2018, Plaintiff, PAYNE's, office flooded six times, creating black mold growth and causing Plaintiff's sensitivities further complications, including anaphylactic reactions, migraines, and lung infections.

14. On December 18, 2017, Plaintiff, PAYNE, was exposed to hydraulic fluid while in the course and scope of her employment with Defendant, SEMINOLE, which further inflamed her lungs and exacerbated other sensitivities, for which she required emergency medical attention, as did another employee. As a result of this exposure, Plaintiff was diagnosed with lung pleurisy, allergic reaction, chest congestion, and nerve inflammation.

15. When Plaintiff, PAYNE, returned to work on January 8, 2018, the hall near her office had been freshly painted and the fumes caused an immediate reaction with Plaintiff's chemically sensitive lungs and she felt as though she was going into anaphylaxis, so she immediately left the area.

16. Plaintiff, PAYNE, then requested from Ms. McNeill that she be relocated into a substation trailer as an accommodation, to which Ms. McNeill agreed. This accommodation fit the direction given to Plaintiff by her physician that she needed to work in an environment with clean air. It also complied with the recommendations of the toxicologist who examined her as part of the workers' compensation process, and who advised that she should work in the substation trailer as she needed a clean workspace.

17. On or around March 5, 2018, Plaintiff, PAYNE, submitted a request for intermittent leave under the Family and Medical Leave Act of 1993 (FMLA) the accompanying medical certification.

18. Shortly after Plaintiff, PAYNE's, request for relocation, she was told by Defendant, SEMINOLE, that the Human Resources department was being reorganized and that she and

another employee were being placed under the supervision of another employee who was not a supervisor and earned a salary of about $20,000 less than Plaintiff's.

19. In April 2018, Vice President David Ferrentino and Ms. McNeill called Plaintiff, PAYNE, to discuss her returning to her original office. Mr. Ferrentino asked what it would take for her to move back, to which Plaintiff responded that the paint fumes were still too strong as they continued to paint various areas of the building, and that it would also help if Defendant, SEMINOLE, would replace the carpet with tile due to the repeated flooding and uncontrolled mold growth, as well as removing the grease trap which regularly clogs and exacerbates the flooding. She also advised as an aside that other employees were also being affected by the leaking roof, molded ceiling tiles, molded air vents, bursting pipes, and sewage fumes.

20. Shortly after Defendant, SEMINOLE, opened the doors in the building of Plaintiff, PAYNE's, original office and placed fans in the hallways at her request, another employee shut the doors and turned off the fans. The doors were never re-opened and the fans were never turned back on, despite Plaintiff's request.

21. In 2017, Shayla McNeill, began her employment with Defendant, SEMINOLE, as Director of Human Resources and Legal Services & Assistant General Counsel.

22. In May 2018, Ms. McNeill made multiple comments about Defendant, SEMINOLE, employing "too many old white people" that had "been there too long."

23. On June 27, 2018, Plaintiff, PAYNE, was terminated by Ms. McNeill, who advised her that it was not a performance issue, but rather a restructuring and elimination of Plaintiff, PAYNE's, position.

24. At the time of her termination, Plaintiff, PAYNE, had been working for Defendant, SEMINOLE, for nearly 38 years, longer than any other employee at Defendant's Palatka plant, with the exception of one other employee who worked there for two months longer than Plaintiff.

25. The only other HR employee, approximately in her mid-thirties, had the same position as Plaintiff, PAYNE, and had been employed for less than two years, yet she remained employed after Plaintiff's termination. When Plaintiff asked about this coworker, Ms. McNeill told Plaintiff that they were not there to discuss that individual.

26. On September 7, 2018, Plaintiff, PAYNE, discovered a job posting for a nearly identical position as hers except that it was explicitly seeking a student to fill the position. The other HR employee was still employed at this time.

## COUNT I – DISABILITY DISCRIMINATION (ADA)

27. Plaintiff realleges and adopts Paragraphs 1-26 as if set out in full herein.

28. At all times material hereto, Defendants were employers of Plaintiff, its employee, under the Americans with Disabilities Act of 1990 (ADA).

29. Plaintiff is a member of a protected class under the ADA.

30. By terminating Plaintiff, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her known disability, because the Defendant regarded her as having a disability, and/or because of Plaintiff's record of having a disability, in violation of the ADA.

31. Defendant also failed to provide Plaintiff reasonable accommodations for her disability.

32. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages and therefore prays for the following relief:

    a.    Back pay and benefits;

    b.    Interest on back pay and benefits;

    c.    Front pay and benefits;

    d.    Compensatory damages;

    e.    Pecuniary and non-pecuniary losses;

    f.    Punitive damages;

    g.    Costs and attorney's fees; and

    h.    Any other relief this Court deems just and equitable.

## COUNT II – DISABILITY DISCRIMINATION (FCRA)

33. Plaintiff realleges and adopts Paragraphs 1-26 as if set out in full herein.

34. At all times material hereto, Defendant was employer of Plaintiff, its employee, under the Florida Civil Rights Act of 1992 (FCRA).

35. Plaintiff is a member of a protected class under the FCRA

36. By terminating Plaintiff, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her known disability, because the Defendants regarded her as having a disability, and/or because of Plaintiff's record of having a disability, in violation of the Florida Civil Rights Act (FCRA).

37. Defendant also failed to provide Plaintiff reasonable accommodations for her disability.

38. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages and therefore prays for the following relief:

    a.    Back pay and benefits;

    b.    Interest on back pay and benefits;

 c. Front pay and benefits;

 d. Compensatory damages;

 e. Pecuniary and non-pecuniary losses;

 f. Punitive damages;

 g. Costs and attorney's fees; and

 h. Any other relief this Court deems just and equitable.

## COUNT III – AGE DISCRIMINATION (ADEA)

39. Plaintiff realleges and adopts Paragraph 1-26 as if set out in full herein.

40. At all times material hereto, Defendant was employer of Plaintiff, its employee, under the Age Discrimination in Employment Act of 1967 (ADEA).

41. Plaintiff is a member of a protected class under the ADEA.

42. By the conduct describe above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on the basis of her age in violation of the ADEA.

43. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages and therefore prays for the following relief:

 a. Back pay and benefits;

 b. Interest on back pay and benefits;

 c. Front pay and benefits;

 d. Liquidated damages;

 e. Costs and attorneys' fees;

 f. For any other relief this Court deems just.

## COUNT IV – AGE DISCRIMINATION (FCRA)

44. Plaintiff realleges and adopts Paragraphs 1-26 as if set out in full herein.

45. At all times material hereto, Defendant was employer of Plaintiff, its employee, under the Florida Civil Rights Act of 1992 (FCRA).

46. Plaintiff is a member of a protected class under the FCRA.

47. By the conduct describe above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on the basis of her age in violation of the Florida Civil Rights Act.

48. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages and therefore prays for the following relief:

   a. Back pay and benefits;

   b. Interest on back pay and benefits;

   c. Front pay and benefits;

   d. Compensatory damages for emotional pain and suffering;

   e. Punitive damages;

   f. Costs and attorneys' fees;

   g. For any other relief this Court deems just.

## COUNT V – FMLA RETALIATION

49. Plaintiff realleges and adopts Paragraphs 1-26 as if set out in full herein.

50. Plaintiff engaged in activity protected by the FMLA.

51. By the conduct described above, Defendant discriminated and retaliated against Plaintiff for engaging in activity protected by the FMLA.

52. Defendant's actions constitute violations of the FMLA.

53. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages and therefore prays for the following relief:

    a. Back pay and benefits;

    b. Interest on back pay and benefits;

    c. Front pay and benefits;

    d. Liquidated damages;

    e. Costs and attorney's fees;

    f. For any other relief this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

WHEREFORE, Plaintiff, WENDY PAYNE, demands a trial by jury and judgment against Defendant, SEMINOLE ELECTRIC COOPERATIVE, INC.

DATED this 16th day of October, 2019.

    FLORIN ROEBIG, P.A.

    /s/ Thomas D. Roebig, Jr.

    **THOMAS D. ROEBIG, JR., ESQUIRE**
    Florida Bar No.: 0651702
    **PARKER Y. FLORIN, ESQUIRE**
    Florida Bar No.: 0127139
    **TAYLOR D. ROEBIG, ESQUIRE**
    Florida Bar No.: 1002817
    Primary Email: TDR@FlorinRoebig.com
    Secondary Email: PFlorin@FlorinRoebig.com
        Lisa@FlorinRoebig.com
    777 Alderman Road
    Palm Harbor, Florida 34683
    Telephone No.: (727) 786-5000
    Facsimile No.: (727) 772-9833
    Attorneys for Plaintiff

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | Tampa Field Office |

State or local agency, if any: Florida Commission On Human Relations and EEOC  511-2019-00746

| Name (Indicate Mr., Mrs., Ms.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Wendy Allen Payne | 386-328-8003 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 312 W. River Road | Palatka, FL 32177 | 2/17/1960 |

NAME OF THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one, list below)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include area code) |
|---|---|---|
| Seminole Electric Cooperative, Inc. | 500+ | (813) 963-0994 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 16313 N. Dale Mabry Hwy. | Tampa, FL 33618 | Hillsborough |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

RACE ☐   COLOR ☐   SEX ☐   RELIGION ☐   NATIONAL ORIGIN ☐
RETALIATION ☒   AGE ☒   DISABILITY ☒   OTHER (Specify _____)

DATE DISCRIMINATION TOOK PLACE
EARLIEST: 1/2018     LATEST: 6/27/18

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s))*

I: **PERSONAL HARM:** I worked as a Human Resources Generalist with Seminole Electric Cooperative, Inc., beginning my employment in 1981. The head of HR, Shayla McNeil, who had only become employed by the company in the last year, had made multiple comments shortly before my termination about there being "too many old white people" working at the company that had "been there too long." These comments were made in May 2018. I was terminated by Ms. McNeil on June 27, 2018, and was told that it was not a performance issue, but rather the company was restructuring and eliminating my position. Another employee, approximately in her mid-thirties, had the same position as me and to my knowledge she is still employed. I had been at the Palatka plant longer than anyone else aside from one person (37.5 years), Tracy Jett, who was there only two months longer than me.

In July 2007, I was unknowingly exposed to X-ray radiation at work between 300 and 390 times in three days. Seminole Electric brought in an X-ray machine that was being used in the room adjacent to my office and pointed toward my body with no lead shield to protect me from the radiation. As a result of the repeated exposure, of which I was unaware at the time, I became very sick and was diagnosed with various ailments, including but limited to radiation poisoning, peripheral neuropathy, polyneuropathy, axonal neuropathy, and loss of motor control. I still have extreme pain, burning, and throbbing all over the front of my body, legs, arms, hands, and feet, as well as incontinence and loss of bowel control as a result of the radiation exposure. My treating physician advised me that I would have a high risk of cancer for the rest of my life.

Between 2009 and 2018, my office flooded six times, creating black mold growth which caused asthma, anaphylactic reactions, migraines, and lung infections. Furthermore, on December 18, 2017, I was exposed to hydraulic fluid while in the course of my employment with Seminole Electric, for which I required emergency medical attention. The exposure to the hydraulic fluid inflamed my lungs and exacerbated my pre-existing chemical sensitivities. As a result, I was diagnosed with lung pleurisy, allergic reaction, chest congestion, and nerve inflammation. When I returned to work on January 8, 2018, the hall in my office had been painted and the fumes immediately began to irritate my lungs and I could hardly breathe. I requested to be relocated in the substation trailer to accommodate my chemical sensitivities. Ms. McNeil agreed and I was relocated to that office. My toxicologist had advised me that I needed to work in a clean environment, and the substation trailer fit my needs at the time. I submitted a request for intermittent FMLA leave with accompanying medical certification on or around March 5, 2018.

EXHIBIT A

Shortly after my request for relocation, I was told the department was being reorganized, and I and another employee were placed under the supervision of Joe Marina, who was not a supervisor and earned a salary of about $20,000 less than my own. In April 2018, Vice President David Ferrentino and Ms. McNeil called me to discuss my returning to my original office in the Admin. Building. Mr. Ferrentino asked what it would take for me to move back, and I indicated that the paint fumes were still strong (they continued to paint various areas of the building). I also advised that it would help if they replaced the carpet with tile (due to the repeated flooding and mold accumulation), replaced the window gaskets to prevent leaking, and that the grease trap should be removed as it clogs and contributes to the flooding. I further advised that other employees were being affected by the leaking roof, molded ceiling tiles, moldy air vents, bursting pipes, and sewage fumes. After management opened the doors in the Admin. Building and placed fans in the hallways at my request in order to help ventilate the fumes, HR representative Candis Steele shut the doors and turned off the fans.

I was terminated by Ms. McNeil on June 27, 2018, and was told that it was not a performance issue, but rather the company was restructuring and was eliminating my position. Another employee, approximately in her mid-thirties, had the same position as me and to my knowledge she is still employed. On September 7, 2018, a job posting for a similar job as my own was posted on CareerBuilder (attached). I had been at the Palatka plant for 37.5 years - longer than anyone else except for one - and was only about 3.5 years away from receiving my full retirement benefits. Seminole Electric robbed me of my opportunity to receive those benefits and retire with dignity from the company I devoted my entire professional life to and for whom I sacrificed so much of my own physical and mental health.

II: **RESPONDENT'S REASON FOR ADVERSE ACTION:** Restructuring the department and eliminating my position.

III: **STATEMENT OF DISCRIMINATION:** I believe I was discriminated against because of my disability and/or in retaliation for requesting accommodations for my disability, in violation of the Americans with Disabilities Act of 1990, as amended, and Florida Statutes Chapter 760; and/or because of my age, in violation of the Age Discrimination in Employment Act and Florida Statutes Chapter 760.

[X] I want this charge filed with both the EEOC and the State or local agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures.
I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
I declare under penalty or perjury that the foregoing is true and correct.

NOTARY - (When necessary for State and Local Requirements)
SIGNATURE OF COMPLAINANT SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE

NOTARY PUBLIC:
SIGN: Ashli Davis
PRINT: Ashli Davis
State of Florida at Large (SEAL)

10/19/2018
DATE           CHARGING PARTY (Signature)

EEOC FORM 5 (Rev. 06/92)

Received
NOV 07 2018
Tampa Field Office

ASHLI DAVIS
Notary Public - State of Florida
Commission # FF 227491
My Comm. Expires May 5, 2019

EEOC Form 161-B (11/16)    **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Wendy Allen Payne<br>312 W. River Road<br>Palatka, FL 32177 | From: | Tampa Field Office<br>501 East Polk Street<br>Room 1000<br>Tampa, FL 33602 |
|---|---|---|---|

[ ]  *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 511-2019-00746 | STANLEY MOFFETT, Investigator | (813) 202-7922 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X]  More than 180 days have passed since the filing of this charge.

[ ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[X]  The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Evangeline Hawthorne*    7/19/19

Enclosures(s)    **Evangeline Hawthorne, Director**    *(Date Mailed)*

cc:   Seminole Electric Cooperative, Inc.          Florin & Florin, P.A.
      c/o Allen Norton & Blue, P.A.               Attn: Parker Y. Florin, Esq.
      Attn: Brian Koji, Esq.                      777 Alderman Road
      324 South Hyde Park Avenue                  Palm Harbor, FL 34683
      Suite #: 225
      Tampa, FL 33606

                              **EXHIBIT B**