## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

WENDY PAYNE,

     Plaintiff,

v.                                Case No. 3:19-cv-1173-TJC-MCR

SEMINOLE ELECTRIC
COOPERATIVE, INC., A Florida
corporation,

     Defendant.

_____

## O R D E R

     Plaintiff Wendy Payne says she was wrongfully terminated from her position at Defendant Seminole Electric Cooperative Inc. The case is before the Court on Seminole's Motion for Summary Judgment (Doc. 83), to which Payne responded in opposition (Doc. 107), and Seminole replied (Doc. 108).

## I. BACKGROUND

     Payne first began working for Seminole, an electric generation and transmission cooperative, in 1981 at Seminole's coal plant facility in Palatka, Florida. (Docs. 1 ¶ 9, 83 at 5). Payne was working as a Human Resources Generalist when she was terminated in June 2018. (Docs. 84 at 261:5–6; 107 at 2).

While at Seminole in July 2007, Payne was unknowingly exposed to X-ray radiation and in December 2017 Payne was also exposed to hydraulic fluid. (Doc. 84 at 142–43, 206–07). Payne testifies that these experiences caused her to become "very sick" and resulted in lasting injuries. Id. at 207:13–25. Further, Payne alleges that her office repeatedly flooded between 2009 and 2018, and in January 2018, paint fumes dominated her office after Seminole painted the hallway outside her office; both incidents caused Payne health complications. (Doc. 1 ¶¶ 13, 15). When Payne's office flooded, "Seminole relocated Payne temporarily and spent several thousand dollars to rip up and replace the carpet and sheetrock," which "satisfied Payne's needs." (Doc. 83 at 12). Similarly, when the hallway was being painted, Seminole immediately agreed to move her to another space, which again satisfied Payne's needs. (Docs. 83 at 12–13; 84 at 169). Payne was not required to return to her original office before she was terminated. (Doc. 84 at 170:7–10).

In December 2017, Payne took leave after her mother passed, then soon after she returned, she again had to go on leave after the hydraulic fluid incident. Id. at 142, 145, 151:17-23. In March 2018, Payne submitted a Notice of Eligibility for intermittent leave under the Family and Medical Leave Act of

1993 (FMLA).[1] (Docs. 1 ¶ 17; 84 at 305–306). However, Payne never requested time off under the FLMA. (Doc. 84 at 307:9-11).

In May 2018, Payne had a conversation with several other Seminole employees where she jokingly stated that certain co-workers were on her "shit list," and if they were, they would not be eligible for jobs at a new plant; indicating that Payne may have had some control over hiring for the new plant. (Docs. 107 at 5–6; 93 at 28; 91 at 14:17-15:1). The conversation was reported and investigated, but the investigator did not speak with Payne. (Docs. 107 at 6; 92 at 20:20-21). In May 2018, Payne and another Seminole employee overheard several comments made by Director of Human Resources and Assistant General Counsel, Shayla McNeil, and others, that Seminole employed "'too many old white people" and that people "had been there too long.'" (Docs. 107 at 17; 87 at 50:15-20, 52:8-53:1). Other employees at Seminole informed Seminole that Payne was "difficult to work with and expressed concerns about her ability to handle sensitive information in a confidential manner." (Docs. 83 at 10; 88 at 21:15–25, 24:11–23; 96 ¶ 7).

Throughout late 2017 and 2018, Seminole was restructuring because it was removing one of its coal plants from service. (Doc. 83 at 2). In 2017, Seminole terminated its HR managers and placed McNeil and General Counsel

---

[1] Payne had previously filed FMLA paperwork after the 2017 incident which required workers' compensation. (Doc. 83 at 34).

David Ferrentino in charge of HR. (Doc. 107 at 2; 93 at 13–14). Seminole hired a consulting firm, Burton-Fuller, to assist with the restructuring. (Doc. 95 ¶ 5). In June 2018, Payne's position was eliminated after McNeil and Ferrentino recommended that Payne be dismissed for a variety of reasons, including behavioral issues and that Payne "was becoming counterproductive to the restructuring efforts." (Docs. 83 at 11; 86 at 32:11–34:9). Seminole never replaced Payne; however, sometime between September 2018 and April 2019, Seminole opened and filled a student "co-op" HR generalist position similar to Payne's position. (Docs. 1 ¶ 26, 83 at 20; 107-7 at 1). Since November 2017, Seminole's HR department was reduced from thirteen employees to six employees. (Doc. 93 at 41:16–19).

Payne filed her Complaint in October 2019, alleging disability discrimination under the Americans with Disabilities Act (ADA) and the Florida Civil Rights Act of 1992 (FCRA) (Counts I, II), age discrimination under the Age Discrimination in Employment Act of 1967 (ADEA) and the FCRA (Counts III, IV), and retaliation under the Family and Medical Leave Act (FMLA) (Count V). (Doc. 1). Seminole answered the Complaint (Doc. 10) and later filed the current Motion for Summary Judgment (Doc. 83).

## II. DISCUSSION

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Further, the Court will construe all evidence in a light most favorable to Payne. See Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1098 (11th Cir. 2014).

## A. Employment Discrimination

Plaintiffs can provide either direct or circumstantial evidence to support their employment discrimination case. "Direct evidence is that which establishes discriminatory intent without inference or presumption. But only the most blatant remarks whose intent could only be to discriminate on the basis of [the protected characteristic] constitute direct evidence." Morrison v. City of Bainbridge, GA, 432 F. App'x 877, 880 (11th Cir. 2011) (quoting Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1226 (11th Cir. 1993)) (citations and alterations omitted). Payne argues that she has presented direct evidence of discrimination in the form of overheard comments from McNeil about Seminole having "too many 'old people' and 'old white people'" and "'too many people that had been at Seminole too long.'" (Doc. 107 at 17). In an appropriate context, the comments could be direct evidence. They are likely not direct evidence here because the comments were not made specifically to or about Payne. See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990) ("One example of direct evidence would be a management memorandum saying, 'Fire Earley—he is too old.'"). In and of themselves, the comments are insufficient to create a

material dispute of fact. Therefore, the Court will analyze Payne's circumstantial evidence.

If a plaintiff provides only circumstantial evidence of discrimination in an ADA discrimination, ADEA discrimination, or an FMLA retaliation case, courts use a burden shifting framework first established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See</u> <u>Collado v. United Parcel Serv., Co.</u>, 419 F.3d 1143, 1149 (11th Cir. 2005) (ADA discrimination); <u>Mazzeo v. Color Resols. Int'l, LLC</u>, 746 F.3d 1264, 1270 (11th Cir. 2014) (ADEA discrimination); <u>Hurlbert v. St. Mary's Health Care Sys., Inc.</u>, 439 F.3d 1286, 1297 (11th Cir. 2006) (FMLA retaliation). Under the <u>McDonnell Douglas</u> framework, "[i]f the plaintiff makes out a prima facie case, the burden then shifts to the defendant to articulate a legitimate reason for the adverse action. If the defendant does so, the plaintiff must then show that the defendant's proffered reason for the adverse action is pretextual." <u>Hurlbert</u>, 439 F.3d at 1297 (citation omitted).[2]

## B. Prima Facie Case

The Court must first determine if Payne has established a prima facie case for each of her claims.[3] "To establish a prima facie case of ADA

---

[2] Payne argues that the Court should move away from the rigid <u>McDonnell Douglas</u> standard and use the more holistic standard found in <u>Wright v. Southland Corp.</u>, 187 F.3d 1287, 1292–93 (11th Cir. 1999). (Doc. 107 at 9–14). While the Court will generally follow the <u>McDonnell Douglas</u> framework, the Court's conclusions are the same under either standard.

[3] Seminole argues that the Court should use a corollary doctrine to the

discrimination, [the plaintiff must show] (1) a disability, (2) that she was otherwise qualified to perform the job, and (3) that she was discriminated against based upon the disability." <u>Cleveland v. Home Shopping Network, Inc.</u>, 369 F.3d 1189, 1193 (11th Cir. 2004).[4] Seminole does not contest that Payne had a disability, and a reasonable jury could find that she was qualified to perform her job based on her many years of experience and that she was discriminated against based on her disability because Payne required significant ongoing accommodations while at Seminole.

"To make out a prima facie case of age discrimination, the plaintiff must show four things: '(1) that she was a member of the protected group of persons between the ages of forty and seventy; (2) that she was subject to adverse employment action; (3) that a substantially younger person filled the position

---

prima facie standards that is sometimes used in ADEA reduction-in-force (RIF) cases. (Doc. 83 at 16–17; <u>see</u> <u>Mazzeo</u>, 746 F.3d at 1270–71. A case is not an RIF case unless the position is eliminated; if other employees have assumed the plaintiff's duties, the position is not "eliminated" under the standard. <u>See</u> <u>Mazzeo</u>, 746 F.3d at 1271; <u>Earley</u>, 907 F.2d at 1083 (holding a position was eliminated when most of the work was transferred to a computerized inventory control system). In construing the evidence in a light most favorable to Payne, there is a genuine dispute of material fact regarding whether Payne's position was eliminated. Other employees assumed many of Payne's duties including the other HR generalist, Seminole's Tampa HR office, and a student intern. (<u>See</u> Docs. 83 at 18; 94 at 18; 107 at 20).

[4] The Court will analyze Payne's federal and state disability and age discrimination claims together. <u>Mazzeo</u>, 746 F.3d at 1266 ("Disability and age-related discrimination actions under the FCRA are analyzed under the same frameworks as the ADA and ADEA, respectively.").

that she sought or from which she was discharged; and (4) that she was qualified to do the job for which she was rejected.'" <u>Kragor v. Takeda Pharms. Am., Inc.</u>, 702 F.3d 1304, 1308 (11th Cir. 2012) (quoting <u>Damon v. Fleming Supermarkets of Fla., Inc.</u>, 196 F.3d 1354, 1359 (11th Cir. 1999)). Evidence shows that Payne was over forty and qualified for her job, that she was fired, and that several of her job duties were passed to the other HR generalist, who was substantially younger than Payne. (Doc. 107 at 18; 83 at 29). Further, the overheard comments regarding the excess of "old white people" at the company are potentially evidence of age discrimination. (Doc. 107 at 17).

"In order to state a claim of [FMLA] retaliation, an employee must allege that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity." <u>Strickland v. Water Works & Sewer Bd. of City of Birmingham</u>, 239 F.3d 1199, 1207 (11th Cir. 2001) (citing <u>Parris v. Miami Herald Publ'g Co.</u>, 216 F.3d 1298, 1301 (11th Cir. 2000)). Seminole only contests the causation element. (Doc. 83 at 33–35). A plaintiff can establish causation "if the plaintiff shows that the decision maker was aware of the protected conduct at the time of the adverse employment action." <u>Krutzig v. Pulte Home Corp.</u>, 602 F.3d 1231, 1234 (11th Cir. 2010). Further, "causation may be established when a decisionmaker followed a biased recommendation from a non-decisionmaker without independently investigating the complaint." <u>Caldwell v. Clayton Cty. Sch. Dist.</u>,

604 F. App'x 855, 861 (11th Cir. 2015) (citing Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1332 (11th Cir. 1999)). A reasonable jury could find that Lisa Johnson—who terminated Payne—adopted McNeil's and Ferrentino's biased recommendations and did not independently investigate Payne's termination. (See Doc. 89 at 57–58). Johnson did not know that Payne requested FMLA leave; however, McNeil was aware that Payne filed FMLA paperwork related to a December 2017 incident. (Docs. 89 at 10; 93 at 8). Payne has made a prima facie case for each of her claims at this stage.

### C. Legitimate Reason for Adverse Action

Seminole offers several reasons for terminating Payne including:

> Seminole eliminated Payne's position during the transition of the business and the reorganization of the HR department. (Ex. C, Payne Dep., p. 68); (Ex. D, Adams Dep., p. 19). Seminole hired outside consultants to assess the HR department following the termination of its Director of HR and Manager of HR. (Ex. N, Adams Dec., ¶ 5). Burton-Fuller told Seminole that it did not need two HR Generalists and that Payne was by far the weaker of the two employees. Her strengths were more administrative in nature rather than the critical analysis, planning, and program development skills that the position was designed for and needed moving forward. Id. at ¶¶ 19, 20. Seminole adopted Burton-Fuller's conclusions and, along with the subsequent information from [other employees at Seminole], determined that Payne's position should be eliminated. (Ex. L, McNeill Dep., p. 53); (Ex. E, Ferrentino Dep., p. 35-37).

(Doc. 83 at 25–26). Seminole's reasons for terminating Payne are legitimate, nondiscriminatory, and nonretaliatory; thus, the burden shifts to Payne to show that a reasonable jury could find that Seminole's proffered reasons are pretextual. See Woodbury v. Sears, Roebuck & Co., 901 F. Supp. 1560, 1563 (M.D. Fla. 1995) ("In general, the employer has an 'exceedingly light burden' in setting forth legitimate, non-discriminatory reasons for termination.") (quoting Perryman v. Johnson Products Co., 698 F.2d 1138, 1142 (11th Cir. 1983)).

To show Seminole's proffered reasons were pretextual, Payne must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (citations omitted). As discussed previously, Payne has offered evidence in the form of overheard comments which, when viewed in a light most favorable to Payne, evinces Seminole's discriminatory intent. Payne also offers circumstantial evidence showing that Seminole's proffered reasons may not be legitimate. First, when Payne was terminated, Payne testifies that McNeil told her that she was not being terminated because of anything that Payne had done, it was instead that her position was eliminated. (See Docs. 84 at 261:94–262:2 ("And she said, 'No, you're not being terminated. You didn't do anything wrong. Your performance is great. We have just eliminated your position.'"); 92 at 32 ("[Payne]

asked . . . why [she was being let go]. And [McNeil] explained that her position was being eliminated . . . .")). However, Seminole now states in its Motion for Summary Judgment that Payne was terminated, in part, because of her "limited qualifications and abilities to act as the sole HR Generalist, [and] her behavioral issues as raised by [employees at Seminole that were involved in the "shit list" conversation] . . . ." (Doc. 83 at 24–25). Second, Seminole repeatedly states that a consulting firm recommended that Payne's position be eliminated. (Id. at 26). But Payne offers evidence that the consulting firm, at one point, recommended that Seminole hire additional employees, and at no point did the consulting firm recommend terminating Payne. (See Docs. 107 at 3; 85 at 29:3– 8, 33:20-23). Finally, evidence shows that Payne was actively involved in the restructuring efforts before her termination. (Doc. 107 at 6–7). Payne required significant accommodations including working in a separate office following the painting of the hallways in her building, and she applied for FMLA leave, and soon thereafter Seminole decided she was counterproductive to the restructuring initiatives. (Doc. 83 at 11–13, 34). These inconsistencies and contradictions are enough to create a material dispute of fact.

Payne has shown enough to survive summary judgment, but only barely. The Court believes that the parties would benefit from another try at mediation. The parties may mediate again with their previous mediator, but the Court would be willing to ask Magistrate Judge Richardson to conduct a settlement

conference if the parties think that would be fruitful. The Court will wait to further schedule the case until mediation is complete.

Accordingly, it is hereby

**ORDERED:**

1. Defendant Seminole Electric Cooperative Inc.'s Motion for Summary Judgment (Doc. 83) is **DENIED**.

2. No later than **February 18, 2022**, the parties shall file a Joint Notice of Selection of Mediator selecting either a mediator or Judge Richardson.

**DONE AND ORDERED** in Jacksonville, Florida the 1st day of February, 2022.

*Timothy J. Corrigan*
TIMOTHY J. CORRIGAN
United States District Judge

ckm
Copies:
Counsel of record